NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

HICKS–PONDER CO., a Division of Blue
Bell, Inc., Respondent.

No. 71–1930.

United States Court of Appeals,
Fifth Circuit.

March 21, 1972.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Michael S. Winer, Atty., N. L. R. B., Washington, D. C., C. Woodrow Greene, Director-Region 28, N. L. R. B., Albuquerque, N. M., Eugene G. Goslee, Acting Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Herman M. Levy, Joseph C. Thackery, Attys., N. L. R. B., Washington, D. C., for petitioner.

John Edward Price & Associates, Fort Worth, Tex., for respondent.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

PER CURIAM:

The respondent manufactures and distributes men's slacks at a plant in El Paso, Texas, employing about 750 workers, mainly female machine operators. The greater part of these women are poorly educated and circumstanced Mexican nationals with limited use of the English language who commute on a daily basis across the border to the factory. This plant has been the object of attempts at unionization for fifteen years by Amalgamated Clothing Workers of America. The respondent is openly and without dispute hostile to unions and so far has succeeded in resisting unionization.

The latest effort on the part of the union occurred in the spring and summer of 1969. After a hearing on May 9 of that year, the Regional Director granted the union's petition for an election and on June 18 ordered one held July 11, 1969. After an all-out campaign by both sides the election was held. The union lost the election by roughly 5 to 1.

Unfair labor practice charges and objections to the election were filed shortly thereafter by the Union, the cases were consolidated, and after a trial in December 1969 the Trial Examiner rendered decision May 18, 1970. The Board adopted the Trial Examiner's decision

November 24, 1970 and brought these enforcement proceedings thereafter.

The Board found the company guilty of violating Section 8(a) (1) of the Act by interfering with, restraining and coercing its employees in the exercise of their protected rights under Section 7 of the Act, by speeches of various members of management and use of written material, and by promises of an additional paid holiday, during the election campaign. The Board entered a cease and desist order as to these violations, set aside the election of July 9, 1969, and ordered a second election. The Board further found that the respondent violated Sections 8(a) (1) and 8(a) (3) of the Act by discriminatorily discharging two employees, Reynalda Castellanos and Consuelo Tarin, during the pre-election period because of their pro-union activities, and ordered their re-instatement with back pay, less their net earnings.[1]

■ We find, after careful review of the record against the findings and recommendations of the Trial Examiner that the findings of violation of Section 8(a) (1) of the Act are supported by substantial evidence in the record. The Trial Examiner gave no emphasis to the unsophisticated and disadvantaged nature of the majority of the workers involved. But we note this nevertheless as background. It seems logical to conclude that such persons are more easily influenced by veiled threats and more susceptible to intimidation than typical workers in American plants. With respect to the Section 8(a) (1) violation

the Board's Decision and Order for a Second Election is enforced.

■ As to the violations of Sections 8(a) (1) and 8(a) (3) in connection with the discharges of Castellanos and Tarin, the evidence before the examiner as to discriminatory discharge was unsubstantial and inconclusive.[2] There was ample evidence of non-union grounds for discharge of Castellanos for physical disability and of Tarin for incompetence. We conclude that these charges were not substantiated by the evidence. Enforcement thereof is denied.

Enforced in part; enforcement denied in part.

1. The Board's Decision, Order and Direction of Second Election appear at 186 NLRB No. 92, Cases Nos. 28–CA–1922 and 1942 and 28–RC–1901, 1970 CCH NLRB § 22,478.

2. Briefly, the discriminatory discharge finding by the Trial Examiner required belief of the testimony of the two discharged employees (as to which they were themselves in disagreement in important particulars both as to when and where the incident occurred) that they were observed talking together by Carmen Molinar, a

company supervisor, on the day of Tarin's discharge, one day prior to Castellanos' discharge. The Trial Examiner was required to infer that the supervisor heard what was said, at best an ambiguous reference to a fellow employee, a prospective card signer they were supposedly going to visit, heard one or the other say "The jig is up" when Molinar was spotted, that Molinar understood the reference, and that this incident was the basis of the discharge. We find this reasoning too tenuous and strained to be credited as "substantial evidence".